**2020 IL 125020**


# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket Nos. 125020, 125021)

CHRISTY RIOS *et al.*, Appellees, v. BAYER CORPORATION *et al.*,
Appellants.—NICHOLE HAMBY *et al.*, Appellees, v. BAYER
CORPORATION *et al.*, Appellants.

*Opinion filed June 4, 2020.*


JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Anne M. Burke and Justices Garman, Karmeier, and Michael J.
Burke concurred in the judgment and opinion.

Justice Kilbride specially concurred, with opinion, joined by Justice Neville.


**OPINION**

¶ 1 At issue in these consolidated interlocutory appeals is whether, consistent with
the due process requirements of the Illinois Constitution and the Constitution of the
United States, Illinois may exercise specific personal jurisdiction over an out-of-
state defendant as to the claims of out-of-state plaintiffs for personal injuries

suffered outside of Illinois from a device manufactured outside of Illinois. We hold that courts in Illinois may not exercise specific personal jurisdiction under these circumstances. Accordingly, we reverse the judgments of the appellate and circuit courts.

¶ 2                                    BACKGROUND

¶ 3        The device at issue is Essure, a type of permanent birth control for women. Essure originally was manufactured and developed by Conceptus, Inc., a California corporation. Defendants are Bayer Corporation, incorporated in Indiana with its principal place of business in Pennsylvania; Bayer Healthcare LLC, a Delaware limited liability company with its principal place of business in New Jersey; Bayer Healthcare Pharmaceuticals Inc., incorporated in Delaware with its principal place of business in New Jersey; and Bayer Essure Inc., incorporated in Delaware and headquartered in California until April 2016, when its principal place of business became New Jersey. We refer to defendants collectively as Bayer.

¶ 4        In 2013, Bayer bought Conceptus. Thereafter, it continued the postmarket requirements that the Food and Drug Administration (FDA) mandates for a Class III medical device, such as Essure. According to plaintiffs, Bayer marketed Essure as being safer and more effective than other forms of birth control. However, plaintiffs allege that Essure caused life-altering complications, such as debilitating pain, heavy bleeding that necessitated medication, and autoimmune disorders.

¶ 5        In July 2016, Christy Rios, a resident of Madison County, Illinois, and 94 other plaintiffs from 25 states filed a complaint "for personal injuries suffered as a result of being prescribed and implanted with the defective and unreasonably dangerous product Essure." In November 2016, defendants moved to dismiss the complaint. In relevant part, Bayer argued that it was not subject to personal jurisdiction in Illinois regarding the claims of the nonresident plaintiffs. Two weeks later, Nichole Hamby, a resident of Madison County, Illinois, initiated a separate action against Bayer raising nearly identical claims to those raised in the *Rios* action. Hamby's lawsuit included 85 plaintiffs from 21 states. In December 2016, the *Rios* plaintiffs filed their opposition to defendants' motion to dismiss.

¶ 6    In June 2017, the United States Supreme Court issued its decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. ___, 137 S. Ct. 1773 (2017). Three months later, Bayer moved to dismiss the *Hamby* complaint with prejudice. In part, defendants argued that, following *Bristol-Myers*, a court cannot exercise specific personal jurisdiction over an out-of-state defendant as to the claims of out-of-state plaintiffs when the conduct giving rise to the claims did not occur in the forum state. The *Hamby* plaintiffs opposed defendants' dismissal motion.

¶ 7    Both the *Hamby* and *Rios* plaintiffs then filed first amended complaints. The causes of action in the complaints included negligence, strict products liability, breach of express warranty, breach of implied warranty, and fraud. Plaintiffs alleged that (1) their devices were defectively manufactured, (2) they relied on false or misleading statements in Essure's promotional materials, (3) Bayer failed to adequately warn them and/or their physicians about the device's risks, and (4) their physicians were not adequately trained to perform the Essure procedure. According to plaintiffs, Illinois courts had specific personal jurisdiction over Bayer because it "used Illinois to develop, label, or work on the regulatory approval for Essure" and "created the Essure Accreditation Program and the marketing strategy for Essure in Illinois."

¶ 8    Bayer moved to dismiss the first amended complaints with prejudice. Defendants again argued that Illinois courts lacked specific personal jurisdiction as to the non-Illinois plaintiffs' claims. In response, plaintiffs insisted that the complained-about conduct occurred through defendants' contacts with Illinois. Plaintiffs asserted that Bayer conducted clinical trials in Illinois and used the state as a testing ground for its physician training program. Further, plaintiffs claimed that Bayer orchestrated a marketing campaign in Illinois that ultimately spread that misinformation about Essure nationwide. According to plaintiffs, these in-state activities authorized Illinois courts to exercise specific personal jurisdiction over defendants.[1]

---

[1]Plaintiffs apparently have made similar allegations about Bayer's clinical trials and marketing activities in other states. For example, in *State ex rel. Bayer Corp. v. Moriarty*, 536 S.W.3d 227, 234 (Mo. 2017) (*en banc*), plaintiffs asserted that "Missouri has specific jurisdiction over nonresident Plaintiffs on [the] ground[ ] that Bayer's predecessor, Conceptus, conducted marketing and clinical trials for Essure in Missouri and nonresident Plaintiffs' injuries allegedly arose out of

- 3 -

¶ 9        Although different trial judges were assigned to the *Hamby* and *Rios* lawsuits, they conducted a joint hearing in Madison County on defendants' motions to dismiss the first amended complaints. Roughly three months after the hearing, the courts issued orders denying defendants' motions. The trial courts determined that whether Illinois could exercise specific personal jurisdiction depended on whether (1) the corporate, nonresident defendants had purposefully directed their activities at the State, (2) plaintiffs' claims arose from or related to those contacts with Illinois, and (3) it would be reasonable for Illinois to exercise jurisdiction over defendants. The courts also recognized that plaintiffs bore the burden to establish a *prima facie* basis to exercise personal jurisdiction over the nonresident defendants under Illinois's long-arm statute.

¶ 10       The trial courts determined that they were required to follow *M.M. v. GlaxoSmithKline LLC*, 2016 IL App (1st) 151909, ¶ 75, where the appellate court ruled under analogous circumstances that Illinois had "an indisputable interest" in resolving litigation that stemmed, in part, from clinical trials held in Illinois by Illinois doctors on Illinois subjects. The trial courts ruled that Bayer "conducted a part of its general business in Illinois, and [p]laintiffs' claims arose out of the very [clinical] trials conducted, in part, in Illinois." As such, plaintiffs were found to have pled sufficient facts to establish the link between their claims and Illinois. Further, the trial courts concluded that Illinois had an interest in resolving this litigation and that it was not unreasonable to exercise jurisdiction over Bayer. Defendants petitioned for leave to appeal both cases under Rule 306(a)(3). Ill. S. Ct. R. 306(a)(3) (eff. Nov. 1, 2017).

¶ 11       The appellate court recognized that the due process clause of the fourteenth amendment limits a state's power to exercise personal jurisdiction over a nonresident defendant to those instances where the defendant had, at least, "minimum contacts" with the state. *Hamby v. Bayer Corp.*, 2019 IL App (5th)

---

and related to those trials and marketing." Further, defendants argue—and plaintiffs have not disputed—that plaintiffs alleged the following in other jurisdictions: (1) "Bayer used *** safety and efficacy data [collected in New Mexico] to promote and market Essure in New Mexico and across the United States"; (2) "Bayer used Indiana to develop, create a marketing strategy for, label, and/or work on the regulatory approval for Essure," and "Indiana was the site of clinical studies regarding Essure"; and (3) "Defendants used Pittsburgh, Pennsylvania to develop, create a marketing strategy for, label, and/or work on the regulatory approval for Essure," and "Pennsylvania was the site of clinical studies regarding Essure."

180279-U, ¶ 12; *Rios v. Bayer Corp.*, 2019 IL App (5th) 180278-U, ¶ 11.[2] The court further evaluated whether jurisdiction was proper under Illinois's long-arm statute. *Hamby*, 2019 IL App (5th) 180279-U, ¶ 12; *Rios*, 2019 IL App (5th) 180278-U, ¶ 11. Under the relevant precedent, the appellate court concluded that it "must look to the conduct of Bayer that occurred in Illinois and whether the causes of action in the complaint arose from or were connected to its conduct in Illinois." *Hamby*, 2019 IL App (5th) 180279-U, ¶ 18; *Rios*, 2019 IL App (5th) 180278-U, ¶ 17.

¶ 12    The appellate court also found that defendants had purposefully availed themselves of Illinois. *Hamby*, 2019 IL App (5th) 180279-U, ¶ 20; *Rios*, 2019 IL App (5th) 180278-U, ¶ 19. It observed that "Bayer directly targeted and marketed in Illinois, conducted clinical trials in Illinois, contracted with Illinois physicians and facilities, and established a physician accreditation program in Illinois." *Hamby*, 2019 IL App (5th) 180279-U, ¶ 23; *Rios*, 2019 IL App (5th) 180278-U, ¶ 22. Consequently, the court found that *Bristol-Myers* was "easily distinguishable." *Hamby*, 2019 IL App (5th) 180279-U, ¶ 22; *Rios*, 2019 IL App (5th) 180278-U, ¶ 21.

¶ 13    The appellate court observed that defendants conducted clinical trials for Essure in Illinois and that the complaints cited conduct related to Essure's testing, development, and marketing. *Hamby*, 2019 IL App (5th) 180279-U, ¶ 23; *Rios*, 2019 IL App (5th) 180278-U, ¶ 22. Therefore, the court ruled that "plaintiffs' claims for negligence, strict products liability, breach of express warranty, breach of implied warranty, and fraud for harm suffered as a result of having the Essure device implanted all ar[o]se, at least in part, from Bayer's conduct in Illinois." *Hamby*, 2019 IL App (5th) 180279-U, ¶ 23; *Rios*, 2019 IL App (5th) 180278-U, ¶ 22. The court found that Illinois had an undeniable interest in resolving disputes that arose from clinical trials held by Illinois doctors in Illinois facilities. *Hamby*, 2019 IL App (5th) 180279-U, ¶ 26; *Rios*, 2019 IL App (5th) 180278-U, ¶ 25. Further, noting that the actions would still proceed as to the resident plaintiffs, the court found that dismissing the non-Illinois plaintiffs would result in piecemeal litigation that would not serve judicial economy and that would run the risk of

---

[2]The same panel of the appellate court reviewed defendants' appeals in *Hamby* and *Rios*, and the court issued nearly identical decisions in both cases.

conflicting rulings. *Hamby*, 2019 IL App (5th) 180279-U, ¶ 26; *Rios*, 2019 IL App (5th) 180278-U, ¶ 25. The court therefore concluded that it would not be unreasonable for defendants to litigate in Illinois. *Hamby*, 2019 IL App (5th) 180279-U, ¶ 26; *Rios*, 2019 IL App (5th) 180278-U, ¶ 25.

¶ 14 This court allowed defendants' petition for leave to appeal in *Hamby* and ordered that the cause be consolidated with *Rios*. See Ill. S. Ct. R. 315(a) (eff. July 1, 2018).

¶ 15                                    ANALYSIS

¶ 16 The question before us is whether the circuit court properly exercised specific personal jurisdiction over nonresident defendants as to nonresident plaintiffs' claims for personal injury when the nonresident plaintiffs did not allege any connection between their specific claims and Illinois. Under settled law, plaintiffs bear the burden to establish a *prima facie* basis for exercising personal jurisdiction over a nonresident defendant. See *Russell v. SNFA*, 2013 IL 113909, ¶ 28. And when, as here, the circuit court determined that plaintiffs met their burden based solely on documentary evidence, our review is *de novo*. See *Aspen American Insurance v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 12.

¶ 17 Illinois's long-arm statute authorizes courts in this state to exercise jurisdiction over nonresident defendants. Relevant here is subsection (c), which provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c) (West 2016). When subsection (c) is invoked, we assess whether the nonresident defendants' contacts with Illinois suffice to satisfy both federal and Illinois due process. See *Russell*, 2013 IL 113909, ¶ 30. Bayer, the party challenging jurisdiction, has not argued that the Illinois Constitution imposes any greater restraints on the exercise of jurisdiction than the federal constitution. Therefore, we consider only federal constitutional principles. See *Aspen*, 2017 IL 121281, ¶ 13.

¶ 18 "The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). "A state

court's assertion of jurisdiction exposes defendants to the State's coercive power, and is therefore subject to review for compatibility with the Fourteenth Amendment's Due Process Clause." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 918 (2011). State courts may "exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Internal quotation marks omitted.) *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014).

¶ 19 Two categories of personal jurisdiction have been recognized: general or all-purpose jurisdiction and specific or case-linked jurisdiction. See *BNSF Ry. Co. v. Tyrrell*, 581 U.S. ___, ___, 137 S. Ct. 1549, 1558 (2017). A state court may assert general jurisdiction to hear any claims against a nonresident corporation when the corporation's "affiliations with the State are so continuous and systematic as to render" it "essentially at home" in the State. (Internal quotation marks omitted.) *Goodyear Dunlop*, 564 U.S. at 919. "[P]aradig[m] . . . bases for general jurisdiction" over a corporation include its place of incorporation and its principal place of business. (Internal quotation marks omitted.) *Daimler*, 571 U.S. at 137.

¶ 20 "Specific jurisdiction is very different." *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1780. A state may assert specific personal jurisdiction over an out-of-state defendant only "if the defendant has purposefully directed [its] activities at residents of the forum" and if "the litigation results from alleged injuries that arise out of or relate to those activities." (Internal quotation marks omitted.) *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). "A State generally has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors," and thus, its exercise of specific personal jurisdiction over a nonresident defendant that purposefully directed activities toward residents of the forum is legitimate. *Id.* at 473.

¶ 21 Here, plaintiffs do not argue that Bayer is subject to general jurisdiction in Illinois. Rather, plaintiffs claim that specific personal jurisdiction exists over defendants because, as alleged in the first amended complaints, Bayer "used Illinois to develop, label, or work on the regulatory approval for Essure" and "created the Essure Accreditation Program [(a training program for physicians)] and the marketing strategy for Essure in Illinois." In plaintiffs' view, those in-state

activities, along with Bayer's decision to contract with physicians and "key opinion leaders" in Illinois to conduct clinical trials, permits Illinois courts to exercise specific personal jurisdiction over defendants as to the claims of more than 150 nonresident plaintiffs.

¶ 22　　*Bristol-Myers* forecloses plaintiffs' theory of specific personal jurisdiction. In *Bristol-Myers*, more than 600 plaintiffs filed an action against the defendant in California, claiming that they were injured by a prescription drug that the defendant manufactured. Most of the plaintiffs were not California residents. The defendant was neither incorporated nor headquartered in California. However, during the relevant period, it sold more than $900 million worth of the drug in the state. The nonresident plaintiffs in *Bristol-Myers* did not allege that they obtained the drug from California physicians. Those plaintiffs also did not claim that they were injured by the drug in California or treated for their injuries in California. Nonetheless, the California Supreme Court rejected the defendant's challenge to the exercise of specific personal jurisdiction as to the nonresidents. *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1779.

¶ 23　　The United States Supreme Court reiterated that a nonresident defendant's general connections with a forum do not provide a basis for state courts to assert specific personal jurisdiction. *Id.* at ___, 137 S. Ct. at 1781. The Court chided the state supreme court for permitting the exercise of specific personal jurisdiction without identifying an adequate link between the state and the nonresidents' claims. *Id.* at ___, 137 S. Ct. at 1781. The drug was not prescribed to the nonresidents in California, they did not purchase it in California, and they were not injured by it in California. *Id.* at ___, 137 S. Ct. at 1781. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." (Emphasis in original.) *Id* at ___, 137 S. Ct. at 1781. The Court also found that its decision would "not result in the parade of horribles that respondents conjure up." *Id.* at ___, 137 S. Ct. at 1783. The Court noted that the out-of-state plaintiffs could pursue their claims elsewhere, including by joining in a consolidated action in states that had general jurisdiction over defendant. *Id.* at ___, 137 S. Ct. at 1783.

¶ 24    As was true in *Bristol-Myers*, in this case, defendants do not dispute that they purposefully directed activities toward Illinois. Bayer conducted clinical trials in Illinois (as well as various other states), held a physician training program for Essure, and coordinated a marketing strategy in Illinois. Yet, the question here is whether the nonresident plaintiffs' claims arise out of, or relate to, those activities in any meaningful sense of the terms. We find that they do not.

¶ 25    For example, plaintiffs allege that Bayer failed to establish and maintain procedures to confirm that Essure devices were properly manufactured, and they assert that the manufacturing defects caused their harm. According to plaintiffs, Essure initially was manufactured at Conceptus's manufacturing facility in San Carlos, California. They also allege that Conceptus had manufacturing sites for Essure in Chihuahua, Mexico, and Juarez, Mexico. Then in June 2015, according to plaintiffs, the FDA approved a manufacturing site for Bayer in Heredia, Costa Rica. Conspicuously absent from plaintiffs' allegations, however, is any assertion that their Essure devices were manufactured in Illinois or that Bayer did, or should have, established manufacturing procedures in Illinois. Without such allegations, there is no adequate link between the nonresident plaintiffs' manufacturing defect claims and this forum.

¶ 26    Plaintiffs also allege that Bayer "willfull[y] disseminated false and misleading information [about Essure] at a time when they knew or should have known there were no reasonable grounds for believing these claims to be true." Yet plaintiffs fail to allege that either they or their physicians received that false information in Illinois, and as noted, these plaintiffs and their physicians do not reside in this forum. According to plaintiffs, Bayer also "failed to warn Plaintiffs and their physicians by not reporting the risk of serious defects and life-altering complications described herein that Defendants knew or should have known were associated with Essure prior to the time of Plaintiffs' implantation." However, the nonresident plaintiffs' devices were not implanted in Illinois.[3] And nothing in their

---

[3]For example, one allegation noted that a nonresident plaintiff "was implanted with Essure on July 7, 2010 in Colorado Springs, CO by Dr. Christopher S. Russell"; another alleges a nonresident plaintiff "was implanted with Essure in 2010 in Knoxville, TN by Turkey Creek Medical Center." A third alleges a nonresident plaintiff was "implanted with Essure in 2011 in Galveston, TX at UTMB Galveston."

complaints links Bayer's alleged failure to warn the nonresidents and their physicians to any activities that occurred or should have occurred in Illinois.

¶ 27 Finally, plaintiffs allege that Bayer "undertook a duty of training physicians, including the implanting physician, on how to properly use (1) its own mechanism of delivery and (2) the specialized hysteroscopic equipment manufactured by a third party." In their view, defendants breached their duty to properly train physicians. However, the nonresident plaintiffs do not allege that Bayer trained their physicians in Illinois, and again, the nonresidents' devices were not implanted in Illinois.

¶ 28 In short, the nonresident plaintiffs have identified no jurisdictionally relevant links between their claims and Illinois. See *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1782 (requiring a "connection between the nonresidents' claims and the forum"); see also *Moore v. Bayer Corp.*, No. 4:18 CV 262 CDP, 2018 WL 4144795, at *1 (E.D. Mo. Aug. 29, 2018) ("As many judges in this district have found when considering the same issues involving Bayer and Essure in Missouri, the connections between Missouri and the non-Missouri plaintiffs' claims against Bayer are too attenuated for this court to exercise personal jurisdiction over Bayer."). Where no adequate link exists between Illinois and the nonresident plaintiffs' claims, it necessarily follows that Illinois lacks specific personal jurisdiction over defendants as to those claims. For these reasons, we hold that plaintiffs failed to meet their burden of establishing a *prima facie* basis to exercise specific personal jurisdiction over defendants as to the nonresident plaintiffs' claims.

¶ 29 Plaintiffs direct our attention to *Walden v. Fiore*, 571 U.S. 277, 284 (2014), insisting that our personal jurisdiction inquiry must "focus[ ] on the relationship among the defendant, the forum, and the litigation." (Internal quotation marks omitted.) We agree. That is a correct statement of law. However, this dispute centers on whether non-Illinois residents who failed to identify an affiliation between their claims and relevant activities that took place in this forum may nonetheless try their claims in Illinois. *Bristol-Myers* resolved that state courts lack specific personal jurisdiction over nonresident plaintiffs under similar circumstances. As such, the statement from *Walden* does not support the exercise of jurisdiction here.

¶ 30　　　　We further conclude that it would not be reasonable for the nonresidents' claims to proceed in Illinois. As we noted above, a state may exercise personal jurisdiction over a nonresident defendant only if the defendant has certain minimum contacts with it. See *Daimler*, 571 U.S. at 126. In part, the minimum contacts requirement protects the defendant "against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen*, 444 U.S. at 291-92. This protection is often described in terms of reasonableness. To assess reasonableness in this context, courts consider (1) the burden on defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, and (4) the judicial system's interest in obtaining the most efficient resolution of the controversy. *Id.* at 292. That said,

> "[e]ven if the defendant would suffer minimal or no inconvenience from being forced to litigate before the tribunals of another State; even if the forum State has a strong interest in applying its law to the controversy; even if the forum State is the most convenient location for litigation, the Due Process Clause, acting as an instrument of interstate federalism, may sometimes act to divest the State of its power to render a valid judgment." (Internal quotation marks omitted.) *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1780-81.

¶ 31　　　　These factors weigh strongly against Illinois courts exercising specific personal jurisdiction over defendants for the out-of-state plaintiffs' claims. Illinois has no particular interest in resolving claims that did not arise out of or relate to activities that occurred here. Plaintiffs' interest in obtaining relief also does not weigh in favor of Illinois courts' exercise of specific personal jurisdiction as to non-Illinois plaintiffs. The nonresidents have not explained how Illinois could be a convenient location for this litigation when they were not implanted with their devices here and have identified no other activity that would connect their specific claims to Illinois. Further, defendants assert—and plaintiffs have not disputed—that many nonresident plaintiffs initiated duplicate actions in California, which demonstrates that the interests of judicial economy are not furthered by permitting their claims to proceed in Illinois.

¶ 32　　　　In concluding that jurisdiction was proper, the courts below relied heavily on *M.M.*, 2016 IL App (1st) 151909. We note that *M.M.* was decided nearly one year before *Bristol-Myers*. As such, the appellate court did not have the benefit of the

Supreme Court's additional guidance on the propriety of exercising specific personal jurisdiction under similar circumstances. *Bristol-Myers* has clarified that "[a] corporation's continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." (Internal quotation marks omitted.) *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1781. The Court explained that the fact that in-state plaintiffs allegedly sustained the same injuries from a drug as did nonresidents does not allow a state to assert specific personal jurisdiction over the nonresidents' claims. *Id.* at ___, 137 S. Ct. at 1781. We therefore hold that *M.M.* does not reflect the law in Illinois and should no longer be relied upon.

¶ 33                                    CONCLUSION

¶ 34        In sum, we conclude that the nonresident plaintiffs' claims did not arise out of or relate to defendants' in-state activities and, thus, Illinois courts lack specific personal jurisdiction over Bayer as to the nonresidents' claims.

¶ 35        Accordingly, we reverse the judgments of the appellate and circuit courts. We remand the actions to the trial courts for entry of orders granting Bayer's motions to dismiss the nonresident plaintiffs' claims for lack of personal jurisdiction.

¶ 36        Judgments reversed.

¶ 37        Cause remanded with directions.

¶ 38        JUSTICE KILBRIDE, specially concurring:

¶ 39        Generally, I agree with the majority's determination that plaintiffs' position on specific personal jurisdiction is not supported by the United States Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. ___, 137 S. Ct. 1773 (2017). As the majority explains, this case must be resolved under federal constitutional principles. See *supra* ¶¶ 17-18.

¶ 40        I write separately, however, to express my concern with the approach to specific personal jurisdiction articulated in *Bristol-Myers*. More to the point, I agree with

Justice Sotomayor's dissent from that decision. As Justice Sotomayor aptly observed:

> "[*Bristol-Myers*]'s rule will make it difficult to aggregate the claims of plaintiffs across the country whose claims may be worth little alone. It will make it impossible to bring a nationwide mass action in state court against defendants who are 'at home' in different States. And it will result in piecemeal litigation and the bifurcation of claims. None of this is necessary. A core concern in [the United States Supreme] Court's personal jurisdiction cases is fairness. And there is nothing unfair about subjecting a massive corporation to suit in a State for a nationwide course of conduct that injures both forum residents and nonresidents alike." *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1784 (Sotomayor, J., dissenting).

¶ 41  This case perfectly illustrates Justice Sotomayor's concerns. In these consolidated cases, two plaintiffs, both Illinois residents, filed actions against defendants alleging that their product caused plaintiffs to suffer serious health complications. Plaintiffs' actions also included multiple plaintiffs from other states. In relevant part, defendants moved to dismiss plaintiffs' amended complaints by arguing that the Illinois circuit court lacked specific personal jurisdiction as to the non-Illinois plaintiffs' claims. Defendants, however, did not contest the Illinois circuit court's jurisdiction for the Illinois residents' claims.

¶ 42  In other words, defendants have not raised their jurisdictional objection to the Illinois plaintiffs' claims that are substantively *identical* to the non-Illinois plaintiffs' claims. All claims alleged that plaintiffs were harmed by defendants' nationwide development, marketing, and sales of the allegedly defective device that was implanted in plaintiffs' bodies. In my opinion, there is nothing fundamentally unfair or inefficient about allowing an Illinois court that has jurisdiction over an Illinois resident's claims to adjudicate the largely identical claims of a nonresident plaintiff. See *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1789 (Sotomayor, J., dissenting) (arguing that it " 'does not offend "traditional notions of fair play and substantial justice" [citation] to permit plaintiffs to aggregate claims arising out of a single nationwide course of conduct in a single suit in a single State where some, but not all, were injured.' " (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945))).

¶ 43    Nonetheless, as Justice Sotomayor predicted, this is exactly what *Bristol-Myers* requires. That decision from the United States Supreme Court "make[s] it profoundly difficult for plaintiffs who are injured in different States by a defendant's nationwide course of conduct to sue that defendant in a single, consolidated action." *Bristol-Myers*, 582 U.S. at ___, 137 S. Ct. at 1789 (Sotomayor, J., dissenting). While I have serious reservations about endorsing such an approach, this court must consider federal constitutional principles to resolve this jurisdictional dispute. *Aspen American Insurance Co. v. Interstate Warehousing, Inc.*, 2017 IL 121281, ¶ 13 (citing *Russell v. SNFA*, 2013 IL 113909, ¶ 33). The majority here correctly analyzes and applies *Bristol-Myers*. Accordingly, I join in this decision, albeit reluctantly.

¶ 44    JUSTICE NEVILLE joins in this special concurrence.